UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FABIOLA DERISME, | : |
| PLAINTIFF, | : |
| | : CIVIL ACTION NO. 3:10cv23(VLB) |
| | : |
| v. | : JULY 23, 2012 |
| | : |
| HUNT LEIBERT JACOBSON P.C., | : |
| DEFENDANT. | : |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS' [DKT. #170] MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S [DKT. #174] CROSS MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Fabiola Is Ra El Bey,[1] proceeding *pro se*, brought this suit alleging violations of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110b(a) and – 110g(a), against Defendant Hunt Leibert Jacobson, PC, a Connecticut-based law firm ("Hunt Leibert") in connection with a pending foreclosure action in Connecticut Superior Court. Pending before the Court is Hunt Leibert's motion for summary judgment and Plaintiff's cross motion for summary judgment. For the reasons set forth below, Defendants' motion for summary judgment is granted and Plaintiff's cross-motion is denied.

**Procedural Background**

For the sake of clarity, the Court summarizes the protracted procedural history of this case. This is the second of two substantially similar civil actions

---

[1] Before fileing this action, the Plaintiff converted to Islam and changed her name to Fabiola Is Ra El Bey At her request the Court. Kravitz, J. ruled that she is to be refered to her as Fabiola Is Ra El Bey. *See Derisme v. Hunt Leibert Jacobson*, PC, 3:10-cv-244, 2010 WL 3417857, at *1 n.1-2 (D. Conn. Aug. 26, 2010).

that the *pro se* Plaintiff has filed in this Court against Defendant Hunt Leibert in connection with two pending state foreclosure actions.  *See Derisme v. Hunt Leibert Jacobson, PC*, No. 3:10-cv-244(VLB) (D. Conn. Filed February 19, 2010). These cases arise out of the Defendants' representation of lenders in foreclosure actions filed in the Connecticut Superior Court against the Plaintiff.  The Court has recently ruled on Hunt Leibert's motion for summary judgment and Plaintiff's cross-motion for summary judgment in the other matter which involved many of the same arguments and issues.  See *Derisme*, No. 3:10-cv-244(VLB), Docket entry 308.

On January 7, 2010, Plaintiff filed the instant lawsuit.  *See* [Dkt. #2]. Although not a model of clarity, the original complaint clearly asserted an FDCPA claim.  On January 22, 2010, Hunt Leibert filed its First Motion to Dismiss.  See [Dkt. #8].  In support of the First Motion to Dismiss, Hunt Leibert asserted that process and service of process had been insufficient; that the Complaint failed to state a claim for relief under the Truth in Lending Act ("TILA"); and that the Court lacked subject matter jurisdiction under the *Colorado River* abstention doctrine, *see Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813 (1976), due to the pending state-court foreclosure action.  See [Dkt. #9].  Rather than immediately responding to the First Motion to Dismiss, Plaintiff corrected her early procedural mistake on January 25, 2010 by properly serving Hunt Leibert.  She then filed her First Motion to Amend on February 19, 2010.  Because the *Federal Rules of Civil Procedure* permit a party to amend her complaint once as a matter of course within 21 days after service of a Rule 12(b) motion, *see*

Fed.R.Civ.P. 15(a)(1), the Court granted the First Motion to Amend on February 24, 2010.  *See* [Dkt. ##16,17].

On February 25, 2010-the day after the Court granted the First Motion to Amend Plaintiff filed an Objection to Hunt Leibert's First Motion to Dismiss [Dkt. # 18].   In opposition to the First Motion to Dismiss, Plaintiff pointed out that she had already corrected the service of process problem; clarified that she was alleging an FDCPA claim rather than a TILA claim; and argued that her FDCPA suit against Hunt Leibert was sufficiently distinct from the state-court foreclosure action such that this Court need not abstain from exercising jurisdiction.  *See* [Dkt. #18 at p. 3-4, 8-9].

Plaintiff filed the First Amended Complaint on March 8, 2010.  [Dkt. #21].  In the First Amended Complaint, Plaintiff argues that this Court has subject matter jurisdiction based on both the presence of a federal-law question and on diversity of citizenship.   She further asserts that this Court has jurisdiction "founded upon Public Ministry."  She repeats her FDCPA claim from the original Complaint, and adds a claim under the civil remedies provision of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1964; a claim under 42 U.S.C. § 1983; and a claim under 42 U.S.C. § 1985.

Although Plaintiff filed the First Amended Complaint on March 8, 2010, the parties continued to brief Hunt Leibert's First Motion to Dismiss until March 23, 2010.  The Court held an in-court status conference regarding the First Motion to Dismiss on May 27, 2010.   After the conference, the Court issued an Order

denying the First Motion to Dismiss.  Based on Plaintiff's representations during the conference, the Court concluded that Plaintiff no longer intended to press her claims under 42 U.S.C. §§ 1983 and 1985.  See [Dkt. #34].   During the conference, the Court directed Plaintiff to file a RICO Case Statement as required by the United States District Court for the District of Connecticut's Standing Order in Civil RICO Cases no later than June 28, 2010.  Plaintiff complied with the Court's Order by filing her RICO Case Statement on June 28, 2010.  See [Dkt. #41].  The Court also informed Hunt Leibert that it was free to file a motion to dismiss the RICO claim asserted in the First Amended Complaint.

Hunt Leibert filed its Second Motion to Dismiss on June 10, 2010.  See [Dkt. #37].   Although Hunt Leibert's Second Motion to Dismiss is styled a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Hunt Leibert argues in support of the motion that this Court lacks federal question jurisdiction because the First Amended Complaint fails to state any federal-law claim for relief. *See* [Dkt. #37 at p. 2].  Plaintiff has had numerous opportunities to respond to both arguments and has filed several voluminous memoranda addressing both arguments. *See, e.g.,* [Dkt. #53].  The Court therefore construes the Second Motion to Dismiss as a consolidated motion asserting both lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6).  Hunt Leibert also filed a Motion for a Protective Order to stay discovery along with the Second Motion to Dismiss; the Court granted that motion on July 8, 2010. *See* [Dkt. ## 38, 44].

4

Plaintiff filed her Second Motion to Amend on July 6, 2010, and attached a proposed Second Amended Complaint which is the operative complaint.  See [Dkt. # 42].  In the Second Amended Complaint, Plaintiff  asserts that this Court has subject matter jurisdiction under the federal question jurisdiction statute, *see* 28 U.S.C. § 1331, and under the diversity jurisdiction statute. *See id.* § 1332. She also asserts that this Court has subject matter jurisdiction under 28 U.S.C. § 1337, which providing that federal district courts have jurisdiction over civil actions "arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." The Second Amended Complaint still asserts an FDCPA claim but does not explicitly assert any other federal-law claims.  However, although the Second Amended Complaint does not specifically mention RICO, the Court infers from the fact that Fabiola Is Ra El Bey filed the Second Amended Complaint only a week after filing her RICO Case Statement that she still intends to pursue a RICO claim.  The Second Amended Complaint also asserts that this Court has supplemental jurisdiction over related state-law claims, *see* 18 U.S.C. § 1367, and adds a Connecticut Unfair Trade Practices Act claim.

On July 15, 2010, Hunt Leibert filed a Third Motion to Dismiss, despite the fact the Court had not yet ruled on either Hunt Leibert's Second Motion to Dismiss or Plaintiff's Second Motion to Amend.  *See* [Dkt. #46].  On July 19, 2010, the Court denied the Third Motion to Dismiss without waiting for a response from Plaintiff.  The Court instructed Hunt Leibert that it should file a motion to supplement its briefing on the Second Motion to Dismiss if it wished to make any

new legal arguments.  *See* [Dkt. #48].   The Court also instructed Hunt Leibert to direct any future briefing toward Plaintiff's Second Amended Complaint rather than toward the First Amended Complaint.   On July 26, 2010, Hunt Leibert responded by filing an Objection to the Motion to Amend.  See [dkt. #50].  Plaintiff filed a Reply to the Objection on August 11, 2010.  *See* [Dkt. #53].

On August 25, 2010, the Court ruled on Hunt Liebert's Second Motion to Dismiss and held that Plaintiff's RICO claim failed as a matter of law and concluded that it would not permit Plaintiff to amend her RICO allegations because any such amendments would be futile.   *See Derisme v. Hunt Leibert Jacobson, PC,* No.10cv23, 2010 WL 3417858 (D. Conn. Aug. 25, 2010).  The Court allowed Plaintiff's Second Amended Complaint but held that the only federal-law claim remaining was an FDCPA claim.  The Court noted that the Second Amended Complaint also contained a CUTPA claim and indicated that while "Plaintiff is free to pursue the CUTPA claim as well as her FDCPA claim for the time being. However, under 28 U.S.C. § 1367(c), this Court may decline to exercise supplement jurisdiction over any remaining state-law claims if it dismisses all claims over which it has original jurisdiction."   *Id.* at *9.

On January 7, 2010, Hunt Leibert filed a Sealed Offer of Judgment pursuant to Federal Rule of Civil Procedure 68.  [Dkt. #69].  Hunt Liebert offered to concede liability and to pay Plaintiff $1,000 in statutory damages.  Plaintiff rejected Hunt Leibert's Offer of Judgment on January 18, 2011. *See* [Dkt. #72].  On January 11, 2011, Hunt Leibert filed a Fourth Motion to Dismiss for lack of jurisdiction.  Hunt Leibert argues in support of its Motion to Dismiss that it has offered Fabiola Is Ra

El Bey all of the damages that she can possibly recover in this case, and that this case is therefore moot.  On January 27, 2011, the Court denied the Fourth Motion to Dismiss on the basis that Hunt Leibert had not actually offered Plaintiff the full amount of damages she could potentially recover since a Plaintiff can recover actual damages in an FDCPA case.  *See Derisme v. Hunt Leibert Jacobson, PC*, No.3:10-cv-23, 2011 WL 320302 (D. Conn. Jan. 27, 2011).

On October 14, 2011, Hunt Leibert filed a motion for summary judgment currently pending before the Court.   On the same day, Plaintiff filed a cross-motion for summary judgment also pending before the Court.   On May 2, 2012, Hunt Leibert filed a Fifth Motion to Dismiss which the Court denied as untimely. *See* [Dkt. ##216,217].

The operative Second Amended Complaint alleges two FDCPA violations: (1) that Hunt Leibert violated Section 1692g(a) by failing to send a validation notice within five days of the initial communication on January 6, 2010; and (2) that Hunt Leibert violated Section 1692e by making false or misleading representations regarding (i) the character amount or legal status of the alleged debt, (ii) that the communication was from any attorney, (iii) threatened to take legal action that could not be legally taken, (iv) failure to communicate the alleged debt is disputed, and(v) the use of false representation or deceptive means to collect the alleged debt.  [Dkt. #42].  Plaintiff's CUTPA claim is predicated on the alleged FDCPA violations.   In the Second Amended Complaint, Plaintiff seeks solely injunctive relief that "[a]ll Debt Collection activities of Hunt Liebert

Jacobson PC (including litigation, etc.) with regards to the property in question be withdrawn, ceased and desist immediately and completely."  [*Id.*].

On November 9, 2011 after the close of discovery and motions for summary judgment had been filed, Plaintiff requested a telephonic conference to discuss a purported missing page from the Second Amended Complaint seeking monetary relief.  *See* [Dkt. #184].  Plaintiff informed the Court that it had recently come to her attention after reviewing Defendant's motion for summary judgment that a portion of page 6 containing the relief sought was missing from the Second Amended Complaint.  Plaintiff essentially requested that the Court permit her to amend her complaint to assert a request for monetary relief.  [*Id.*].  The Court denied Plaintiff's request for a telephonic conference and informed Plaintiff that to the extent she seeks to amend her complaint, she must file a motion to amend pursuant to Fed. R. Civ. P. 15 articulating why she should be permitted to amend at this late stage in the litigation.  *See* [Dkt. #186].  To date, Plaintiff has not formally filed a motion to amend the complaint.

<u>Facts</u>

The Court notes that the Plaintiff has disputed every fact asserted on the basis of unsubstantiated and conclusory assertions of law and fact unsupported by admissible evidence on the record.  Plaintiff may not create a dispute of material fact based on unsubstantiated assertions particularly where such facts are supported by the record including documents filed by the Plaintiff herself. The record evidence soundly refutes the Plaintiff's conclusory assertion that

genuine issues of material fact exist.  The record of evidence demonstrates the following facts.

On May 31, 2006, Plaintiff executed a $372,000 mortgage loan application for 85 Westport Road, Easton Connecticut.  *See* [Dkt. #171, Ex. A].  On July 24, 2006,  Plaintiff executed a Note in which Plaintiff agreed that "[i]n return for a loan that I have received, I promise to pay U.S. $372,000.000 (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is Suntrust Mortgage, Inc … I understand that the Lender may transfer this Note."  *See* [Dkt. #171, Ex. C].

On the same day, Plaintiff executed an Open End Mortgage Deed for $372,000 on certain real property known as 85 Westport Road, Easton, Connecticut.  *See* [Dkt. #171, Ex. D].  In the Mortgage Deed, Plaintiff as Borrower "covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property and that the Property is unencumbered, except for encumbrances of record."  [*Id.*].  Plaintiff contests the validity of both the Note and Mortgage Deed.

A title search on 85 Westport Road, Easton Connecticut was completed and indicated that the "purchase date" was July 28, 2006.  *See* [Dkt. #196, Pl. Supplemental Exhibit, Ex Z].  Schedule A to the United General Title Insurance Company Loan Policy indicates that the Mortgage from Plaintiff to SunTrust Mortgage, Inc. "in the principle amount dated July 24, 2006 and recoded on July

28, 2006 at 10:43am in the Easton Land Records."   [Dkt. #196, Pl. Supplemental Exhibit, Ex Z-10].

In April 2009, nearly three years after executing the note and mortgage described above, Plaintiff came to believe that SunTrust had engaged in fraud and violated the Truth in Lending Act ("TILA").   She then composed a number of documents purporting to cancel the mortgage agreement and sent the documents to SunTrust, without offering to either tender the property purchased with the proceeds of the note and secured by the mortgage or to repay the note. *See* [Dkt. #174, Exs. B, C and D].   For example, on April 20, 2009, Plaintiff sent SunTrust a "Notice of Rights to Cancel" in which she stated that "I, Fabiola Derisme, inhabitant located in Fairfield County, Connecticut, Republic being natural flesh and blood Woman of the American Republic, do here state the *following*: In light of careful examination of the mortgage documents given to me on 24th July 2006, I do now hereby serve NOTICE to cancel Mortgage #0203665096.  This notice is being given based on the fact that you failed to fully disclose as required by the Truth-in-Lending Act.  Such conduct is a violation of both State and Federal Consumer Protection Laws…I was never informed that I was signing an illegal contract.  According the CONNECTICUT state contract law, a meeting of the minds (mutual consent) and Mutual Consideration has to be present for a contract to be of any legal force.  There was not a meeting of the minds and SUNTRUST MORTGAGE INC did not bring value of substance to the table therefore assumed no risk.  The only signature on the instant contract is

that of the living, breathing, natural flesh Woman."  [Dkt. #174, Ex. B] (emphasis in the original).

On August 7, 2009, Hunt Leibert on behalf of its client Bank of America, National Association as successor by merger to LaSalle Bank Association as trustee filed complaint seeking foreclosure in Connecticut Superior court.  *See* [Dkt. #171, Ex. E]; *see also* docket number FBT CV-09-6003691, J.D. of Bridgeport.

In response to the Plaintiff's request, Hunt Leibert sent Plaintiff a letter dated January 6, 2010 providing the amount needed to reinstate her loan.  [Dkt. #171, Ex. I].  The letter states that "[t]his office has received your request to provide you with the amounts necessary to bring your loan current (the  on January 8, 2010.  See [Dkt. #171, Def. Local Rule 56 Statement at ¶20].  Plaintiff argues that "the January 6, 2010 letter although received after lawsuit was filed, it is not an admission that it was definitely received on January 8, 2010 because it is very likely that it could have been received on the very evening of January 7, 2010 after Fabiola Is Ra El Bey returned from Federal Court (sic)." [Dkt. #193, Pl. Mem. at p. 19].  Hunt Leibert sent Plaintiff a "debt validation" letter dated January 13, 2010 in which it indicated the balance owed on the loan.  [Dkt. #171, Ex. I.  Thus, this case is premised on the response letter sent to the Plaintiff and the initiation of a foreclosure action by Hunt Leibert as counsel to the Plaintiff's mortgagee.

**Legal Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.*, (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (internal quotation marks and citation omitted).

   "A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch-Rubin v. Sandals Corp.*, No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted).

<u>Analysis</u>

As a preliminary matter, Plaintiff's cross-motion for summary judgment entirely focuses on Plaintiff's argument that Hunt Leibert is not entitled to the affirmative defenses it asserted in its answer. *See* [Dkt.# 174]. An affirmative defense is defined as "'[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's law Dictionary 430 (7th ed. 1999)). Therefore even if the Court were to consider and hold that Hunt Leibert is not entitled to any of the affirmative defenses it pled in its answer, Plaintiff would still not be entitled to a grant of summary judgment in her favor. The Court's analysis on summary judgment is primarily focused on the evidence submitted by the parties relating to the allegations a plaintiff makes in a complaint. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Here, the Court could only grant summary judgment in favor of Plaintiff if first Plaintiff demonstrated there was no genuine dispute as to any material fact relating to her allegations that Hunt Leibert violated the FDCPA and second that the undisputed facts demonstrated that Plaintiff is entitled to judgment as a matter of law. In other words, do the undisputed facts as a matter of law demonstrate that Hunt Leibert violated the FDCPA. Since an affirmative defense

is by definition unrelated to a plaintiff's allegations, a finding by the Court that Hunt Leibert is not entitled to an affirmative defense would not also demonstrate that Hunt Leibert violated the FDCPA as a matter of law.  Accordingly, Plaintiff's argument that she is entitled to summary judgment because Hunt Leibert's affirmative defenses cannot defeat her claim is unavailing.

The Court notes that Hunt Leibert asserted several affirmative defenses for failure to state a claim.  However, "failure to state a claim" is better considered a general defense aimed at the sufficiency of the allegations in the complaint and is appropriately asserted on motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Satchell v. Dilworth*, 745 F.2d 781, 784 (2d Cir. 1984) (holding that a general denial of allegations is insufficient to plead an affirmative defense).  Here, Hunt Leibert has already moved to dismiss Plaintiff's complaint several times for failure to state a claim.  On summary judgment, the Court's analysis is focused on the sufficiency of the evidence and not the sufficiency of the pleadings.  *See e.g., Fox v. Poole*, No.06CV148, 2008 WL 3540619, at *5 (W.D.N.Y. Aug. 12, 2008) ("On a motion for summary judgment, however, the issue is not the sufficiency of the pleadings rather whether evidence has been introduced by the opponent to establish a material issue of fact for the claims alleged in the pleadings to defeat a summary judgment motion."); *Dicara v. Connecticut Educ. Dept.*, No.3:08cv627(PCD), 2008 WL 5083622, at *4 (D. Conn. Nov. 26, 2008) ("'Summary judgment is designed to pierce the pleadings' and evaluate the sufficiency of the evidence to support the claims therein.") (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997)).  Accordingly,

the Court will not entertain any arguments as to the sufficiency of Plaintiff's allegations in her third amended complaint on summary judgment from either party.

Hunt Leibert has primarily argued that it is entitled to summary judgment on the basis that (i) the CUTPA claim is barred by absolute immunity, (ii) there is no ascertainable loss under CUTPA, (iii) no emotional distress damages may be awarded under CUTPA; and (iv) the FDCPA suit was filed before any breach of duty occurred and before any damages could have accrued.  Plaintiff argues that Hunt Leibert's arguments on summary judgment are "prejudicial as some of the 'grounds' that they have stated are raised for the first time on Summary judgment and Plaintiffs were not on notice about some of these 'grounds,' as such any grounds raised for the first time on Summary Judgment, and that were never raised in its answer or affirmative defense is thus  waived and/or forfeited." [Dkt.# 193 at p.1].

Plaintiff appears to be under the misimpression that a defendant's answer must contain its legal arguments and that failure to include such arguments constitutes a waiver.  However under Rule 8(b)(1), in responding to a  pleading, a party must "(a) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party."  Fed. R. Civ. P. 8(b)(1).  Therefore, a defendant is only required to answer with a general denial and then may raise specific legal arguments on summary judgment.  Accordingly, Hunt Leibert is not precluded from raising such arguments on its motion for summary judgment.

> ### i. Sections 1692g and 1692e of the FDCPA are not applicable to Hunt Leibert since Hunt Leibert was enforcing a security interest and not collecting a debt

In Plaintiff's companion case, *see* Docket No. 10-cv-244(VLB), the Court also ruled that the Sections 1692g and 1692e was not applicable to Hunt Leibert since Hunt Leibert was enforcing a security interest and not collecting a debt. Although the Court's analysis with respect to the instant case is identical to its analysis with respect to the companion case, for the convenience of the parties the Court will repeat its entire analysis.

In the instant case, Plaintiff has asserted that Hunt Leibert violated Section 1692g(a) by failing to send a validation notice within five days of the initial communication on January 6, 2010; and (2) that Hunt Leibert violated Section 1692e by making false or misleading representations regarding (i) the character amount or legal status of the alleged debt, (ii) that the communication was from any attorney, (iii) threatened to take legal action that could not be legally taken, (iv) failure to communicate the alleged debt is disputed, and(v) the use of false representation or deceptive means to collect the alleged debt.  The entire basis of Plaintiff's FDCPA claims is premised on the assumption that Hunt Leibert was collecting a debt when it filed the foreclosure action in Superior Court and thereby Hunt Leibert was subject to Sections 1692g and 1692e of the FDCPA. Under Connecticut mortgage foreclosure law, a foreclosure action is not a legal action to enforce a debt but rather an equitable action to enforce a security interest rather than a debt collection.  As will be explained further below, an

enforcer of a security interest falls outside of the scope of the FDCPA except for the provisions of Section 1692f(6) and therefore an enforcer of a security interest would not be subject to the provisions in Sections 1692g and 1692e of the FDCPA.

### a. Hunt Leibert was enforcing a security interest and not collecting a debt

"Connecticut follows the title theory of mortgages which provides that on the execution of a mortgage on real property, the mortgagee holds legal title and the mortgagor holds equitable title to the property.... In a title theory state such as Connecticut, a mortgage is a vested fee simple interest subject to complete defeasance by the timely payment of the mortgage debt." *Mortgage Electronic Registration Sys., Inc. v. White*, 278 Conn. 219, 231 (2006).   The Connecticut Supreme Court has explained that the

> title theory of mortgages is a series of legal fictions [that serves] as a convenient means of defining the various estates to which conveyances may give rise.... Despite our title theory of mortgages, [i]n substance and effect ... and except for a very limited purpose, the mortgage is regarded as mere security ... and the mortgagor is for most purposes regarded as the sole owner of the land.... The mortgagee has title and ownership enough to make his security available, but for substantially all other purposes he is not regarded as owner, but the mortgagor is so regarded, always subject of course to the mortgage.

*Town of Groton v. Mardie Lane Homes, LLC*, 286 Conn. 280, 290 (2009) (internal quotation marks and citations omitted).   "The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage ... Generally, foreclosure

means to cut off the equity of redemption." *Ocwen Federal Bank, FSB v. Charles*, 95 Conn.App. 315, 322-34 (2006) (internal quotation marks and citations omitted).

Under Connecticut law, an action to collect a debt would be an action at law rather than in equity.   It is well established that "ordinarily [a] money judgment is obtained by an action at law.... [A]n action is to be deemed legal in nature, rather than equitable, where the only relief sought is the collection of money damages."  *Gagne v. Vacarro*, 80 Conn.App. 436, 442 (2003), cert. denied, 268 Conn. 920 (2004).   On the other hand it has long been recognized that a "foreclosure action, however, is an equitable proceeding." *City of New Haven v. God's Corner Church, Inc.*, 108 Conn.App. 234. 239 (2008).   "Generally, foreclosure means to cut off the equity of redemption, the equitable owner's right to redeem the property.... ." *White*, 278 Conn. at 229-30 (internal quotation marks and citation omitted).  A judgment of strict foreclosure, when it becomes absolute and all rights of redemption are cut off, constitutes an appropriation of the mortgaged property to satisfy the mortgage debt. *National City Mortg. Co. v. Stoecker*, 92 Conn. App. 787, 793 (2006).

The Connecticut Supreme Court has noted that that "[a]t common law, a mortgagee was required to elect between a foreclosure action or an action on the underlying debt.... Thus, even if the value of the property that the mortgagee gained was less than the debt owed to her, the entry of judgment precluded any further common-law proceedings on the note.... Consequently, in 1833, the legislature created the remedy of the deficiency judgment in order to make the plaintiff whole when the value of the security did not cover the amount of the debt

owed to the plaintiff." *Linden Condominium Assn., Inc. v. McKenna*, 247 Conn. 575, 587 (1999) (internal quotation marks and citations omitted).   Connecticut courts have concluded however that the fact "that a separate proceeding may result in a personal judgment against the debtor for the amount of the debt unsatisfied by the foreclosed property does not convert that portion of the equitable foreclosure proceedings into an action at law.   With these legal principles in mind, we conclude that a judgment of foreclosure does not call in whole or in part for the payment of a sum of money but, rather, it calls for the vesting and divesting of title to real property." *City of New Haven,* 108 Conn.App. at 140. (citations omitted).

Therefore under Connecticut law a mortgage is considered a "mere security" in which a mortgagee holds "title and ownership enough to make his security available."   *Town of Groton*, 286 Conn. at 290.    Further, a foreclosure proceeding seeks to cut off the equity of redemption and a judgment of foreclosure results in the vesting and divesting of title to property in discharge of a duty to, as opposed to, the payment of a sum of money.  *City of New Haven*, 108 Conn.App. at 140. (citations omitted).   Consequently, when Hunt Leibert filed the foreclosure action in Superior Court, Hunt Leibert was not seeking a money judgment on behalf of its client but was instead seeking to enforce the security interest of its client.

The Court notes that Hunt Leibert's foreclosure complaint also contained a claim for a deficiency judgment.   Under the Connecticut foreclosure statutory regime, "[t]he foreclosure of a mortgage is a bar to any further action upon the

mortgage debt, note or obligation against the person or persons who are liable for the payment thereof who are made parties to the foreclosure...." Conn. Gen. Stat. §49-1.  However, Conn. Gen. Stat. §49-14 furnishes an exception to §49-1 by providing that, "[a]t any time within thirty days after the time limited for redemption has expired, any party to a mortgage foreclosure may file a motion seeking a deficiency judgment."  Conn. Gen. Stat. §49-14.  Therefore under §49-14, the mortgagee has to seek a deficiency judgment upon written motion made within thirty days after the time limited for redemption has expired.  Since a deficiency judgment seeks money damages it is tantamount to an action seeking to collect a debt.  *See Eichman v. J. & J. Bldg. Co., Inc.*, 216 Conn. 443, 453 (1990) ("Indeed, deficiency judgment hearings more closely resemble suits for collection than condemnation hearings.").

The failure to timely move for a deficiency judgment is a bar to any subsequent action to collect the debt previously secured by the mortgage. Although deficiency proceedings are a part of the main foreclosure suit they are separately brought by written motion and if not timely made will be lost. *See e.g., Maresca v. DeMatteo*, 6 Conn.App. 691, 696 (1986) ("[T]he deficiency judgment procedure, although procedurally a part of the foreclosure action, serves the separate function of providing for recovery on the balance of the note which was not satisfied by the strict foreclosure"),*overruled on other grounds by Ferrigno v. Cromwell Dev. Assocs.*, 44 Conn.App. 439 (1997); *F.D.I.C. v. Hillcrest Assocs.*, 233 Conn. 153, 172-73 (1995) (concluding that although the thirty-day time limitation under §49-14 was not subject matter jurisdictional that "does not mean, however,

that it can be ignored with impunity…if the mortgagee files an untimely motion for a deficiency judgment, it would be improper for the court to render such a judgment unless the mortgagor had, either expressly or by its conduct, consented thereto….Thus, the time limitation in §49-14(a)  is more properly considered to be mandatory, which means that it must be complied with absent waiver or consent by the parties, rather than subject matter jurisdictional, which would preclude any extension of time even by express waiver or consent."); *F.D.I.C. v. Retirement Management Group, Inc.*, 31 Conn.App. 80, 84 (1993) ("strict compliance with the procedural requirements of §49-14 is required in order to permit the trial court to render a deficiency judgment in a mortgage foreclosure action."); *Simsbury Bank & Trust Co. v. Ray Carlson Lumber Co.*, 154 Conn. 216, 220 (1966) (holding that the "requirements of s49-14 providing for deficiency judgments are explicit and unambiguous.  Since there was no compliance with its requirements as to appraisal and report, the plaintiff was not entitled to, and the court properly denied its motion for, a deficiency judgment.").

Moreover, in the event that the value of the subject property was more than the debt owed, there would be no deficiency and thus the mortgagee would not be entitled to a deficiency judgment regardless of whether the mortgagee made a claim in the foreclosure complaint for a deficiency judgment.  Although the deficiency proceeding is considered a part of a foreclosure suit, it is not initiated until after the mortgagee files a motion in accordance with the requirements of §49-14 including the implicit requirement "that the plaintiff provide the court with sufficient evidence to demonstrate that she is entitled to a deficiency judgment."

21

*Brownstein v. Spilke*, 117 Conn.App. 761, 766 (2009).  By including a claim for deficiency judgment in the foreclosure complaint, a mortgagee merely preserves its ability to initiate deficiency proceedings in the foreclosure action at a later time should the mortgagee choose to do so.  The inherent implication of the statutory regime under §49-14 and §49-1 is that until a timely filed motion for deficiency judgment pursuant to §49-14 is made a foreclosure action is solely an action in equity to enforce a security interest.  Once a timely motion for deficiency judgment has been made pursuant to §49-14 that will have the effect of converting the proceeding into an action at law for money damages ancillary to the initial action in equity for foreclosure to effectuate the full and complete resolution of the issues between the mortgagor and the mortgagee in the most efficient manner.

Here, although the foreclosure complaint contained a claim for a deficiency judgment, to date no timely motion seeking a deficiency judgment has been made as required under §49-14 in the foreclosure action. *See Bank of America v. Derisme*, Docket No. FBT-CV_09-6003691-S.  Since Hunt Leibert has not initiated deficiency proceedings under Connecticut's statutory regime the foreclosure action is solely an action in equity seeking the remedy of foreclosure and was never converted into an action at law seeking money damages.  Therefore Hunt Leibert has sought only to enforce its client's security interest in the foreclosure action and has not yet sought a money judgment.  At most, Hunt Leibert has preserved its client's ability to seek a deficiency judgment at a later time by including the claim in the complaint.  However, since Hunt Leibert has not

initiated deficiency proceedings pursuant to §49-14 on its client's behalf, it has not attempted to collect a debt in connection with the foreclosure action but instead has only sought to enforce its client's security interest.

### b. An enforcer of a security interest falls outside the scope of the FDCPA except for the provisions of Section 1692f(6)

There is a split of authority as to whether enforcers of security interest are "debt collectors" for purposes of Section 1692f(6) only or whether enforcers of security interest should be considered "debt collectors" under the general definition of Section 1692a(6) and thereby subject to the entire FDCPA.  *See Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, Civ.No.06-3103(RHK/AJB), 2007 WL 2695795, at *3 (D. Minn. Sept. 12, 2007) (acknowledging split of authority and citing cases).  The Second Circuit has not yet addressed this question and so this is a matter of first impression before this Court.

Under Section 1692a, "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  §1692a(6).  In addition, Section 1692a(6) "places limits' on the term 'debt collector' by providing that '[t]he term does not include' six specific classes of debt collectors.   Law firms who initiate foreclosures of mortgages on real property are not included among the six *excluded* classes."   *Chomilo*, 2007 WL 2695795, at *3 (quoting §1692a(6)) (emphasis in the original).  Lastly, Section 1692a(6) states that "for the purpose of

section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the *enforcement of security interests*."  §1692a(6) (emphasis added).

Since Section 1692a(6) expressly includes enforcers of security interests only in reference to Section 1692f(6), courts have held that an enforcer of security interest is therefore not a debt collector for purposes of the other sections of the FDCPA.  The Eleventh Circuit recently addressed this issue and reasoned that since "the statute specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of §1692f(6)" that "reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act."  *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460 (11th Cir. 2009).  The Eleventh Circuit explained that this conclusion was in line with the interpretive cannon of "*expressio unius est exclusion alterius*, which provides that the expression of one thing implies the exclusion of another."  *Id.* (internal quotation marks and citation omitted).

The Sixth Circuit came to the same conclusion that the purposeful inclusion of enforcers of security interests for one section of the FDCPA implies that the term debt collector does not include an enforcer of security interests for any other sections of the FDCPA.  *Montgomery v. Huntington Bank*, 346 F.3d 693, 700-701 (6th Cir. 2003).  The Sixth Circuit's decision in *Montgomery* adopted the reasoning of *Jordan v. Kent Recovery Servs., Inc.*, 731 F.Supp. 652, 656 (D. Del. 1990).  In *Jordan*, the court examined the plain meaning of the FDCPA, canons of

statutory construction, and relevant legislative history in coming to its conclusion that although Congress included within the definition of "debt collectors" those who enforce security interests, it limited that definition to the provisions of Section 1692f(6).  *Id.* at 657.  The *Jordan* court explained that "'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'" and therefore it appeared that Congress intended an enforcer of a security interest to fall outside the ambit of the FDCPA except for the provisions of §1692f(6).  *Id.* (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

The *Jordan* court further indicated that §1692f(6) when viewed in conjunction with the FDCPA's legislative history "provides the key to understanding the reason Congress drew a distinction between a debt collector and an enforcer of a security interest."  It explained that the "FDCPA was enacted in order to prevent the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have." *Id.* at 658 (citation omitted).  Whereas

> [i]n contrast to a debt collector, an enforcer of a security interest with a 'present right' to a piece of secured property attempts to retrieve something which another person possesses but which the holder of the security interest still owns.  Unlike the debtor who lacks the money sought, the possessor of secured property still has control of the property.  Any failure to return the property to the rightful owner occurs not through misfortune but through a deliberate decision by the present possessor to avoid returning the property.  Accordingly, the evil sought to be regulated by the FDCPA, *i.e.,* harassing attempts to collect money which the debtor does not have due to misfortune, is not implicated by the actions of an enforcer of a security interest with a 'present right' to the secured property.

> **Thus the legislative history confirms that Congress intended an enforcer of a security interest … to fall outside the ambit of the FDCPA for all purposes except for the prohibitions described in § 1692f(6).**

*Id.* The *Jordan* Court also noted that the Federal Trade Commission ("FTC"), who is empowered by Congress to enforce the FDCPA issued a "Commentary on the Fair Debt Collection Practices Act" in which the FTC expressed its view that enforcers of security interests only fall within the ambit of § 1692f(6). *Id.*

This Court is likewise persuaded that the legislative history, plain meaning, statutory construction, and the FTC's guidance support the conclusion that an enforcer of a security interest is only subject to § 1692f(6) and not to any other section of the FDCPA. Other courts have reached this same conclusion for the same reasons. *See e.g.*, *Chomilo*, 2007 WL 2695795, at *3 (concluding that an enforcer of security interest, such as a law firm foreclosing on mortgages of real property, fall "outside the ambit of the FDCPA except for the provisions of section 1692f(6)."); *Rosado v. Taylor*, 324 F.Supp.2d 917, 924 (N.D. Ind. 2004) ("Security enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices" but acknowledging that only Section 1692f(6) applies to security enforcement activities); *Hulse v. Ocwen Fed. Bank, FSB*, 195 F.Supp.2d 1188, 1204 (D. Or. 2002) (finding that foreclosing on property pursuant to a deed of trust was not the collection of a debt within the meaning of the FDCPA); *Barbatini v. Quality Loan Serv. Corp.*, No.CV-06-0065-EFS, 2007 WL 26775, at *3 (E.D.Wash. Jan. 3, 2007) ("the inclusion of an enforcer of a security interest in § 1692f(6) implies that the term 'debt collector' does not include an enforcer of a security interest for any other section of the FDCPA"); *Beadle v.*

26

*Haughey*, No.Civ. 04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA since [s]ecurity enforcement activities fall outside the scope of the FDCPA") (internal quotation marks and citation omitted); *Payne v. Reiter & Schiller, P.A.*, No.11-2067 (JRT/FLN), 2012 WL 1054873, at *2 (D.Minn. Mar. 8, 2012) (agreeing with the *Chomilo* court's conclusion that  "based on the plain language of the statute, enforcers of security interests are 'debt collectors' only for one specific provision of the FDCPA); *cf. Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) (holding that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests.").

As discussed above, an action seeking foreclosure under Connecticut law should be considered the enforcement of a security interest as opposed to an action to collect a debt.  Although there is a split of authority on this issue, it appears that a majority of courts who have addressed this question have also concluded that foreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA.  *See e.g., Warren*, 342 Fed. Appx. 458 at 461 (holding the foreclosing on a security interest, such as foreclosing on a home, is not debt collection activity for purposes of Section 1692g); *Beadle*, 2005 WL 300060, at *3 ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA … In short, it seems very well established that foreclosing on a mortgage

does not constitute debt-collecting activity under the FDCPA"); *Overton v. Foutty & Foutty, LLP,* No. 1:07-CV-0274-DFH-TAB, 2007 WL 2413026, at *3-6 (S.D.Ind. Aug. 21, 2007) ("If a person invokes judicial remedies only to enforce the security interest in property, then the effort is not subject to the FDCPA (other than § 1692f(6) and § 1692i(a))."); *Chomilo,* 2007 WL 2695795, at *5 (holding that there is no dispute that defendant was enforcing a security interest "through Minnesota's nonjudicial foreclosure-by-advertisement statute"); *Rosado,* 324 F.Supp.2d at 924 (finding that cases holding that mortgage foreclosure is not a debt collection activity to be "eminently sensible since '[a] mortgage is used to grant a security interest in real property'") (quoting *Black's Law Dictionary* 1357 (6th ed. 1991)); *Morris v. Equi First Corp.,* No.3:09-1086, 2011 WL 1337404, at *6 (M.D. Tenn. April 7, 2011) ("[I]t is nonetheless clear that activity undertaken to seize or foreclose on the property of a debtor pursuant to a security interest can subject a defendant to liability under the narrow provision of 15 U.S.C. § 1692f(6)"); *Stamper v. Wilson & Assocs.,* No.3:09-cv-270, 2010 WL 1408585, at *5 (E.D. Tenn. Mar. 31, 2010) ("the majority of courts hold that law firms that initiate non-judicial foreclosure proceedings are not collecting a debt, but rather, enforcing a security interest."); *cf. Wilson v. Draper & Goldberg, P.L.L.C.,* 443 F.3d 373, 376 (4th Cir. 2006) (foreclosure activities constitute debt collection); *see also Gray v. Four Oak Court Ass'n, Inc.,* 580 F.Supp.2d 883, 887 (D. Minn. 2008) (acknowledging split of authority and citing cases).

In addition, courts have drawn a distinction between non-judicial foreclosures which are intended to only enforce the mortgagee's security interest

and judicial foreclosure which also seeks a personal judgment against the debtor for a deficiency which would amount to a debt collection.  *See Rousseau v. Bank of New York*, No.08-cv-00205-PAB-BNB, 2009 WL 3162153, at *8 (D. Colo. Sept. 29, 2009) (collecting cases).  Based on this distinction, these courts have concluded that  "in contrast to a foreclosure that is only against the property, where there is some attempt to collect money in addition to the enforcement of a security interest, an FDCPA claim will lie, at least for the conduct related to the money collection."  *Id.*; *Overton v. Foutty & Foutty, LLP*, No.1:07-cv-0274-DFH-TAB, 2007 WL 2413026, at *6 (S.D.Ind. Aug. 21, 2007) ("If a person invokes judicial remedies *only* to enforce the security interest in property, then the effort is not subject to the FDCPA (other than § 1692f(6) and § 1692i(a)). But if the person is also seeking additional relief, such as a personal judgment against the borrower, then the FDCPA applies.") (emphasis in the original); *McDaniel v. South & Assocs., P.C.*, 325 F.Supp.2d 1210, 1217 (holding that the filing of a judicial foreclosure proceeding which sought personal judgment against debtor amounted to debt collection activity under the FDCPA).

    This Court agrees that where there is an attempt to collect money in addition to the enforcement of a security interest, the other provisions of the FDCPA might apply to the conduct related to the collection of money.   As discussed above under Conn. Gen. Stat. §49-14, a mortgagee only seeks a personal judgment against the mortgagor upon a timely filed written motion.  Consequently the other provisions of the FDCPA, such as Sections 1692g and 1692e, will only apply in a Connecticut foreclosure proceeding once a timely filed

motion for a deficiency judgment pursuant to §49-14 has been made.  Here since Hunt Leibert has not filed a motion for a deficiency judgment it has not engaged in conduct related to the collection of money and consequently the provisions of Sections 1692g and 1692e are not applicable to its conduct.  The Court therefore grants summary judgment as to Plaintiff's claims that Hunt Leibert violated the FDCPA by violating Sections 1692g and 1692e as those provisions are not applicable in the instant matter.[2]

### c. The Court questions whether the filing of a state foreclosure proceeding can serve as a basis for an FDCPA action

The Court has so far assumed in its analysis that an FDCPA action could be predicated on the filing of a state foreclosure action either under Section 1692f or under Sections 1692e and 1692g once a motion for deficiency judgment is filed.  However, the Court questions whether in view of the legislative purposes underlying the FDCPA that the filing of a state foreclosure proceeding constitutes the type of abusive debt collection practices proscribed by the FDCPA.  It is also unclear to this Court that the purposes of the FDCPA would be furthered by

---

[2] The Court's grant of summary judgment based its conclusion that Defendant was enforcing a security interest and not collecting a debt based on the Defendant's general assertion that the FDCPA does not apply and on its own independent research, rather than the arguments made in the parties' briefs. However "[j]ust as the Court of Appeals 'may affirm the District Court's order of summary judgment on any ground that finds adequate support in the record' whether or not urged by the parties, a District Court may grant summary judgment on a ground not briefed by the parties where, as here, the record compels that result."  *Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*, No.05Civ.10528(CHS)(DFE), 2008 WL 4579758, at *14 n.18 (S.D.N. Y. Oct. 14, 2008) (citation omitted). Such independent research is particularly appropriate where, as here, the complaint is recondite and verbose, obscuring the gravamen of the contentions.

applying the FDCPA to state foreclosure proceedings considering the panoply of protections and safeguards available to parties of a foreclosure action under Connecticut law.

The Second Circuit recently considered a similar question regarding whether the FDCPA applied to filing a proof of claim in bankruptcy court and held that filing a proof of claim "cannot constitute the sort of abusive debt collection practice proscribed by the FDCPA, and that such a filing therefore cannot serve as the basis for an FDCPA action." *Simmons v. Roundup Funding, LLC*, 622 F.3d 93, 95 (2d Cir. 2010). In coming to this conclusion the Second Circuit stressed that "'[c]ongress acted with the aim of eliminating abusive practices in the debt collection industry, and also sought to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged. These purposes inform the FDCPA's many provisions.'" *Id.* (quoting *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 89 (2d Cir.2008)). The Second Circuit also explained that the FDCA was "'was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life.'" *Id.* (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997)).

The Second Circuit reasoned that "'[d]ebtors in bankruptcy proceedings do not need protection from abusive collection methods that are covered under the FDCPA because the claims process is highly regulated and court controlled. While the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers.'" *Id.* (quoting *B-Real, LLC*

*v. Rogers*, 405 B.R. 428, 432 (M.D. La. May 19, 2009)).  The Second Circuit noted that a debtor in bankruptcy is afforded such protections as revocation of fraudulent proofs of claim and the court's contempt power and concluded that there is "nothing in the FDCPA [that] suggests that it is intended as an overlay to the protections already in place in the bankruptcy proceedings."  *Id.* (internal quotation marks and citations omitted).

The Second Circuit's rationale with respect to bankruptcy proceedings is equally applicable to state foreclosure proceedings.  Under Connecticut law, mortgagors in a foreclosure proceeding likewise do not need protection from abusive collection methods that are covered under the FDCPA because the state foreclosure process is highly regulated and court controlled.  Consequently, the FDCPA's purpose to protect unsophisticated consumers from unscrupulous debt collectors is not implicated when a mortgagee is instead protected by the court system and its officers.

A lawyer filing a foreclosure action in Connecticut is obligated to not make a false statement of fact or law to a tribunal.  *See* Connecticut Rules of Professional Conduct Rule 3.3 (a).  In addition, a lawyer "shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous:  *See* Connecticut Rules of Professional Conduct Rule 3.1.  In addition, "[i]t is generally accepted that the court has the inherent authority to assess attorneys fees when the losing party has acted in bad faith, vexaciously, dilatory, or for oppressive reasons." *Knize v. Knize*, No.FSTFA020190291S, 2007 WL 2938348, at *3 (Conn. Super. Ct. Sept. 18,

2007); *see also Maris v. McGrath*, 269 Conn. 834, 835-36 (2004) (acknowledging that Connecticut recognizes a bad faith exception to the America rule for the award of attorney fees).  Ultimately, the courts supervise and have the authority to discipline, including the power to revoke the license to practice law of any attorney who abuses the judicial process or otherwise fails to fulfill her or his professional responsibility.  See Connecticut Practice Book, Section 2-44 ("The superior court may, for just cause, suspend or disbar attorneys and may, for just cause, punish or restrain any person engaged in the unauthorized practice of law.").  In addition disciplinary proceedings may be initiated by a debtor harmed by the conduct of an unscrupulous or less than diligent attorney.  *Id.* at Sec. 2-32 ("Any person, including disciplinary counsel, or a grievance panel on its own motion, may file a written complaint…alleging attorney misconduct.").  Consequently, there are ample protections afforded by Connecticut courts which guard against a mortgagee filing a frivolous and harassing foreclosure action in the first place and from subsequently engaging in abusive motion practice.

Moreover, as the Second Circuit indicated in *Simmons* it is difficult to understand how a procedure outlined by the Bankruptcy code could possibly form the basis of a violation under the FDCPA.  *Simmons*, 622 F.3d at 95.  It is likewise difficult to understand how a procedure outlined by the Connecticut Practice Book under Connecticut law could also form the basis of a violation under the FDCPA. This is particularly true as to the 2009 FDCPA Claim that Hunt Leibert failed to issue a timely validation notice as 15 U.S.C. § 1692g(d) provides that a "communication in the form or a formal pleading in a civil action shall not

be treated as an initial communication for purposed of subsection (a)" which section imposed the obligation to issue a validation notice. 15 U.S.C. §§ 1692g(a)and (d).

Here, Plaintiff generally asserts that Hunt Leibert violated the FDCPA by prosecuting the state foreclosure action against her.   Under Connecticut law, Hunt Leibert was required to prosecute the action.   This Court doubts that complying with the rules of practice and procedure in Superior Court could form the basis of a violation of the FDCPA.   Prosecuting a state foreclosure action is simply not the type of abusive collective practices that the FDCPA is aimed at eliminating.

Connecticut law also broadly protects mortgagors from fraudulent and deceptive practices by recognizing various defenses to a mortgage action. "Historically, defenses to a foreclosure action have been limited to payment, discharge, release or satisfaction… or, if there had never been a valid lien." *Lasalle Nat. Bank v. Freshfield Meadows, LLC*, 69 Conn. App. 824, 833-34 (2002) (internal quotation marks and citation omitted).  In addition, Connecticut courts have "permitted several equitable defenses to a foreclosure action.   [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had … Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability … abandonment of security … and usury." *Id.* (internal quotation marks and citation omitted).  Additional defenses available to a foreclosure defendant are unclean hands, breach of implied covenant of good faith and fair dealing,

equitable estoppel, laches, CUTPA, and refusal to agree to a favorable sale to a third party. *See TD Bank, N.A. v. Georgetown Land Dev. Co., LLC*, No.DBDCV095008016S, 2011 WL 3211276, at *1 (Conn. Super. Ct. June 28, 2011). "These special defenses have been recognized as valid special defenses where they were legally sufficient and addressed the making, validity or enforcement of the mortgage and/or note … The rationale behind this is that ... special defenses which are not limited to the making, validity or enforcement of the note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action." *Id.* (internal quotation marks and citation omitted).

Notably these defenses are aimed at ensuring the absence of fraud and deceit in the making, validity or enforcement of the mortgage and/or note as opposed to eliminating fraud or deceit in the foreclosure of a valid note. Unsurprisingly, Connecticut courts have not extended these special defenses to include a violation of the FDCPA. *See e.g., Washington Mut. Bank v. Delbuono*, No.CV030081479S, 2003 WL 21958417, at *4 (Conn. Super. Ct. July 29, 2003) (A "violation of the FDCPA is not a valid defense to a foreclosure action" since "the FDCPA addresses a creditor's collection practices rather than the making, validityvor enforcement of the note or mortgage"); *G.E. Capital Mortg. v. Choinski*, No.CV9968877S, 1999 WL 391915, at *2 (Conn. Supet. Ct. June 4, 1999) ("The apparent purpose of the FDCPA is to provide … liability for those who engage in unscrupulous debt collection practices, but not to contest the validity of the underlying debt."). However, to the extent that the FDCPA can be said to

provide a broader commitment to eliminating fraud and deceptive practices more generally, Connecticut foreclosure law provides significantly more protection to a mortgagor than the FDCPA.

In sum, it does not appear that the purpose of the FDCPA is furthered by its application to a Connecticut judicial foreclosure action.  While the FDCPA was designed to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a mortgagee is instead protected by the court system and Connecticut foreclosure law as was the case here.

> ii.    *Even if the FDCPA applied to Hunt Leibert's conduct the undisputed facts demonstrate that Hunt Leibert did not violate either Section 1692g or 1692e*

### a.  Hunt Leibert did not violate Section 1692g

Assuming arguendo that Section 1692g was applicable to Hunt Leibert's conduct, the record of evidence demonstrates that Hunt Leibert did not violate §1692g(a) since Plaintiff, not Hunt Leibert, initiated the communication.  Courts in this circuit have held that the "FDCPA's protections are not triggered by communications initiated by someone other than the debt collector."  *Boyd v. J.E. Robert Co.*, No.05-CV-2455(KAM)(RER), 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010) (FDCPA did not apply where defendants were simply responding to inquiries made by plaintiffs concerning the outstanding amount then due and owing on plaintiff's account); *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, No.05-cv-0583, 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005) (FDCPA did not apply where "Defendant was not 'attempting to collect a debt' and that the

communication *instituted by Plaintiff* was not 'in connection with the collection of any debt.'  Rather, Defendant was merely responding to Plaintiff's inquiries as to how she could bring her mortgage current.") (emphasis in the original); *Nichols v. Washington Mut. Bank*, No.07-cv-3216, 2007 WL 4198252, at \*4-5 (E.D.N.Y. Nov. 21, 2007) (holding that "FDCPA was intended to protect consumers from communications initiated by debt collectors, not consumers.").

In *Gorham-Dimaggio*, the court explained that "the purpose of § 1692 is to ensure that communications *initiated by the debt collector* (not the consumer) are not abusive, deceptive, or unfair" and therefore "when the consumer initiates the communications, many of the policy reasons behind the FDCPA disappear." 2005 WL 2098068, at \*2 (collecting cases) (emphasis in the original); s*ee also Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (examining legislative purposes of FDCPA and concluded that "[t]he FDCPA was passed to protect consumers from deceptive or harassing actions *taken by debt collectors.*") (emphasis added); *Lane v. Fein, Such and Crane, LLP*, 767 F.Supp.2d 382, 387 (E.D.N.Y. Mar. 3, 2011) ("[W]hile the Court is aware of no cases that discuss whether an 'initial communication' could come from a consumer, Section 1692 provides that the purpose of the statute is 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged'.  To impose the obligations of Section 1692g on any debt collector who receives an unsolicited letter from a consumer concerning a debt would, in the Court's view, impose an undue burden on debt collectors who had until then 'refrain[ed] from

using abusive debt collection practices.'") (quoting §1692).  In view of the context and purpose of Section 1692, the *Gorham-Dimaggio* court acknowledged that "[a]lthough, perhaps, subtle, there is a distinction between 'attempting to collect a debt' and responding to a consumer's voluntary inquiries how to bring a debt current." 2005 WL 2098068, at *2. To permit a consumer to unilaterally trigger a debt collector's duty to validate the debt would unduly burden and potentially frustrate a valid debt collection process.  Requiring a debt collector to suspend or stay a foreclosure action following a consumer initiated communication outside of the legal proceeding would burden the courts unnecessarily as the judicial process affords a debtor an avenue to challenge the action by asserting any defenses she or he may have and requires that the debt collector prove its claim to the relief sought.

This Court agrees that the FDCPA's purpose in preventing deceptive or harassing actions taken by a debt collector is simply not furthered by imposing 1692g's obligations on a debt collector where the consumer voluntarily initiates the communication to inquire how to bring a debt current.

Here, the January 6, 2010 response letter unequivocally states that the letter was sent in response to Plaintiff's request.  As was the case in *Boyd and Gorham-Dimaggio*, the letter demonstrates that Hunt Leibert was merely responding to an inquiry initiated by the Plaintiff as to how she could bring her mortgage current.  A reasonably jury would conclude that Hunt Leibert was therefore not attempting to collect a debt but merely responding to Plaintiff's voluntary inquiry.  This Court agrees that to impose the obligations of Section

38

1692g on Hunt Leibert in such a scenario would impose an undue burden in view of the fact that many of policy reasons behind the FDCPA are not implicated where a communication is initiated by a plaintiff and not in connection with the collection of a debt as was the case here.  Consequently, the protections of the FDCPA were not triggered by the January 6, 2010 letter.  Even assuming that Hunt Leibert was subject to 1692g, the record demonstrates that there was no violation of 1692g.

### *Hunt Leibert did not violate Section 1692e*

Assuming arguendo that Section 1692e was applicable to Hunt Leibert's conduct the record of evidence demonstrates there was no violation.  Liberally construing Plaintiff's submissions on summary judgment, Plaintiff advances several theories regarding how Hunt Leibert made false or misleading representations or took false or misleading means in connection with the collection of any debt in violation of Section 1692e.   Each of these theories is wholly unavailing.

First, Plaintiff argues that Hunt Leibert used false, deceptive, misleading and fraudulent collection practices by attempting to collect a debt which in Plaintiff's opinion did not exist because the Mortgage Deed and Note were invalid. Plaintiff argues that the title search conducted by Hunt Leibert indicates that she purchased the property on July 28, 2006. *See* [Dkt. #196, Pl. Supplemental Exhibit, Ex Z].   Plaintiff contends the Mortgage Deed is invalid because it was executed on July 24, 2008 several days before the title search indicated the property was

purchased.  Plaintiff points to the section of the Mortgage Deed in which the Plaintiff as Borrower ""covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, and convey the Property and that the Property is unencumbered, except for encumbrances of record." *See* [Dkt. #171, Ex. D].  Plaintiff reasons that since she had not lawfully seized the estate on July 24, 2008 she could therefore not mortgage the property on July 24, 2008.  *See* [Dkt. 193, Pl. Mem. at p.11].  Plaintiff argues that "[t]herefore, because the Title Search revealed to the defendant that the property was not purchased until July 28, 2006, the Title Search conducted by the defendant revealed that on July 24, 2006, the alleged BORROWER was never legally seized of the property and had absolutely no right or power to mortgage, grant, and convey the Property to the alleged Lender… the placing of lis pendens and the maintenance of the debt collection foreclosure action by the defendant 'constitutes a fraud on a third party or the assistance in the perpetration of such a fraud' from which there is no absolute immunity."  [*Id.* at p. 11-12].  Plaintiff further argues that Hunt Leibert should have known prior to attempting to collect the "debt" that it was invalid based on the title search it conducted.  [*Id.*].

However, Plaintiff's theory that the Mortgage Deed is invalid due to the fact that she purchased the property only after she had executed the Mortgage Deed is wholly specious.  First, it is unclear whether the date on the title search which Plaintiff solely relies on reflects the date that Plaintiff actually purchased the subject property as opposed to the date that the Mortgage Deed was recorded. The Title Insurance Policy Schedule A indicates that the "Mortgage from Fabiola

Derimse to SunTrust Mortgage, Inc. in the principal amount of $372,000.00 dated July 24, 2006, and recorded on July 8, 2006 at 10:43am in the Easton Land Records." [Dkt. #196, Pl. Supplemental Exhibit, Ex Z-10].   Schedule A suggests that the date reflected in the title search indicates merely the date the mortgage was recorded and is not reflective of the actual date the property was purchased by Plaintiff.

Second, even assuming that Plaintiff had purchased the property on July 28, 2008 as she contends Plaintiff would be precluded from challenging the validity of the Mortgage Deed by the common law doctrine of estoppel by deed, which has been recognized in Connecticut for over 120 years.   The Connecticut Supreme Court has explained that

> Where a grantor without title made a conveyance and subsequently acquired title, that title might under the commonlaw warranty become vested in the grantee because, being entitled to recompense in kind for the breach of the warranty, he had an equity to require the transfer of it to him … whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance.

*Zandri v. Tendler*, 123 Conn. 117, 121-22 (1937) (internal quotation marks and citations omitted); *Salisbury Sav. Soc. v. Cutting*, 50 Conn. 113, 1182 WL 2066, at *4 (1882) ("It has repeatedly been decided in Connecticut, that if one who conveys lands with warranty, but without title, subsequently acquires title, he *and all claiming under him* are estopped from setting up such title against the first

41

grantee. The subsequent title enures to the benefit of the first grantee. The same doctrine prevails in other states") (citations omitted); *see also Gatts v. E.G.T.G., GMBH*, 14 Ohio App. 3d 243, 246-47 (1983) (noting that the common law doctrine of estoppel by deed "provides that where a grantor of real estate who has a defective title, or no title, conveys with a covenant of warranty, or its equivalent, and subsequently acquires the title, then such after-acquired title will inure to the benefit of the grantee by estoppel.  This doctrine is equally applicable to a mortgagor who obtains title subsequent to the granting of the mortgage."); 28 Am. Jur.2d II. Estoppel and Waiver §5, ("The doctrine of estoppel by deed has been held to apply to leases, as well as to mortgages").

"Generally, estoppel by deed is based upon equitable considerations, and it rests upon the inequity of allowing the party estopped from asserting a contrary position.  The principle is that when a person has entered into a solemn engagement by deed, he or she will not be permitted to deny any matter that he or she has asserted therein for a deed is a solemn act to any part of which the law gives effect as the deliberate admission of the maker; to him or her it stands for truth, and in every situation in which he or she may be placed with respect to it, it is true as to him or her.  Estoppel by deed promotes the judicious policy of making certain formal documents final and conclusive evidence of their contents." *Id.*  When Plaintiff executed the Mortgage Deed she agreed and represented to the mortgagor that she had lawfully seized the estate and had the right to mortgage, grant and convey the property on July 24, 2006.  The doctrine of estoppel by deed functions to prevent the Plaintiff from subsequently denying

the truth of such representation.   The doctrine therefore prohibits a "party in a deed asserting a particular fact, and thereby inducing another to contract with him, cannot by denial of that fact, compel the other party to seek re-dress against his bad faith." *Thompson v. Gue*, 256 Md. 32, 38 (1969).

Since Plaintiff has admittedly breached the covenant that she had lawfully seized the property on July 24, 2006, under Connecticut Law, such title nonetheless passed to the mortgagee by estoppel because Plaintiff subsequently obtained title on July 28, 2006.  Consequently, the Mortgage Deed created a valid security interest in the property and there could be no fraud when Hunt Leibert placed a Lis Pendens on the land record and initiated the foreclosure action as Plaintiff contends.

Liberally construing Plaintiff's submissions, Plaintiff appears to also argue that since she had cancelled the mortgage pursuant to TILA Hunt Leibert violated the FDCPA by again attempting to collect a debt which in her opinion did not exist.  However, the basis for Plaintiff's claim for rescission under TILA is unfounded.

 "TILA provides a cause of action for consumers to obtain actual or statutory damages for a creditor's failure to comply with its disclosure requirements.  And for certain kinds of transactions, TILA provides consumers with a 'right to rescind the transaction' until the later of; (1) three days following the consummation of the transaction; or (2) the time of delivery of forms for the consumer to exercise the right to rescind, for a period of up to three years. TILA

requires creditors to 'clearly and conspicuously disclose' the consumer's right of rescission."  *Gorbaty v. Wells Fargo Bank, N.A.*, Nos. 10-cv-3291, 10-cv-3354, 2012 WL 1372260, at \*7 (E.D.N.Y. April 18, 2012) (quoting 15 U.S.C. §§ 1635(a), (f), 1640(a)).

"However, TILA exempts from its application 'a residential mortgage transaction as defined in section 1602(w) of this title.'"  *Id.* (quoting §1635(e)(1)); *Grimes v. Fremont General Corp.*, 785 F.Supp.2d 269, 284 (S.D.N.Y. Mar. 31, 2011) ("However, certain types of transactions are specifically exempted from this right of rescission [under TILA], including 'a residential mortgage transaction.'") (quoting §1635(e)(1)); *Ng v. HSBC Mortg. Corp.*, No.07-cv-5434, 2010 WL 889256, at \*2 (E.D.N.Y. Mar. 10, 2010) (noting that §1635(a) "is wholly inapplicable in the context of residential mortgages"); *Eubanks v. Liberty Mortg. Banking Ltd.*, 976 F.Supp. 171, 174 (E.D.N.Y. 1997) ("Rescission is not an available remedy for residential mortgages.").  "TILA defines 'residential mortgage transaction' as a 'transaction in which a *mortgage,* deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained *against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.'" Gorbaty,* 2012 WL 1372260, at \*13 (quoting § 1602(w)) (emphases in the original).

Here, Plaintiff's Mortgage Deed and Note falls squarely within TILA's exemption for a residential mortgage transaction and therefore Plaintiff's Mortgage would not be subject to TILA's right of rescission.   Indeed, Plaintiff has essentially admitted the Mortgage at issue was a "residential mortgage

transaction" as she has averred that the Mortgage was incurred was "for personal, family or household purposes."  *See* [Dkt. #174,  Pl. Local Rule 56a(1) Statement at ¶3].

 In fact, if Plaintiff's Mortgage was not a residential mortgage transaction, Plaintiff would not have any cause of action under the FDCPA in the first place as the FDCPA's protections only extend to transactions that are "primarily for personal, family, or household purposes."  15 U.S.C. §1692a(5); *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006) ("The term 'debt' as defined under the FDCPA refers to '*any obligation of a consumer* to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are *primarily for personal, family, or household purposes*.'  Accordingly, actions arising out of commercial debts are not covered by the protective provisions of the FDCPA.") (quoting 15 U.S.C. §1692a(5)). Consequently, Plaintiff's claim that she rescinded her Mortgage is baseless and therefore Hunt Leibert could have not engaged in fraud when it placed a Lis Pendens on the land record and initiated the foreclosure action as Plaintiff contends.

 Even assuming that TILA's right of rescission was applicable to Plaintiff's Mortgage, under TILA Plaintiff would be obligated to tender the property or its reasonable value to the creditor in order to effectuate rescission.  Section1635 (b) sets forth the steps that must be followed when a borrower seeks rescission of a loan:

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.

15 U.S.C. §1635(b); *see also Moazed v. First Union Mortg. Corp.*, 319 F.Supp.2d 268, 272 (D. Conn. 2004) (granting creditor summary judgment and refusing to enforce borrower's attempted rescission where "it [was] undisputed that the principal balance cannot be returned"); *Midouin v. Downey Sav. And Loan Ass'n, F.A.*, No.09-cv-4140, 2011 WL 4529646, at *7 (E.D.N.Y. Sept. 28, 2011) (noting that the "the borrower's obligation to tender the property arises only upon the performance of the creditor's obligations.") (internal quotation marks and citation omitted); *see also Slojewski v. Polam Fed. Credit Union*, No. 11-15018, 2012 WL 1038576, at *1 (9th Cir. Mar. 29, 2012) (upholding district court's dismissal of TILA rescission claim on the grounds that Plaintiff failed to present evidence of whether Plaintiff could tender the proceeds of the loan back to the Credit Union to warrant rescission); *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1173 (9th Cir. 2003) (explaining that the court may require a plaintiff to prove an ability to tender before deciding whether rescission is warranted).  Consequently even if rescission was an appropriate remedy for a residential mortgage transaction, to be entitled to rescission Plaintiff would have to tender the proceeds of the Note and Mortgage Deed which in this case was $372,000.   Here there is no evidence

that Plaintiff has tendered the $372,000 she borrowed and therefore she would

not be entitled to rescind the Note and Mortgage Deed under TILA.

In addition, Plaintiff argues that Hunt Leibert used deceptive means to

collect the "debt" by "remaining silent and pretending they were private attorneys

for Bank of America N.A., asserting that this caused communications to be sent

to them that should have instead been sent to the alleged servicer and /or Bank of

America N.A. to answer, address and response to." *See* [Dkt. #174, Pl. Local Rule

56a(1) Statement at ¶7].   However, Plaintiff presents no evidence demonstrating

that Hunt Leibert was not a law firm representing Bank America beyond her own

personal conjecture or surmise.   A motion for summary judgment "will not be

defeated merely ... on the basis of conjecture or surmise." *Bryant v. Maffucci,* 923

F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117

(1991).   "The party opposing summary judgment may not rely simply on

conclusory statements or on contentions that the affidavits supporting the

motion are not credible or upon the mere allegations or denials of the adverse

party's pleading." *Goenaga v. March of Dimes Birth Defects Found*., 51 F.3d 14,

19 (2d Cir. 1995) (internal quotation marks and citations omitted).   Indeed, Plaintiff

relies solely on documents she created and sent in support of this assertion

which cannot establish that Hunt Leibert was not a law firm representing Bank of

American.  First, Plaintiff relies on a request she unilaterally sent to Bank of

America c/o of SunTrust Mortgage, Inc. and CC-ed to Hunt Leibert on August 12,

2009 in which she requested a "proof of assignment" since "Bank of America Inc.

is claiming an assignment in the above loan, by way of merger to LaSalle Bank."

*See* [Dkt. #174, Ex. I].  Second, Plaintiff relies on a document she unilaterally created and sent to SunTrust Mortgage, Inc. on August 4, 2009 in which stated that SunTrust Mortgage, Inc. failed to respond to her request for an accounting of the debt.  *See* [Dkt. #174, Ex. J].  Lastly, Plaintiff relies on a document she unilaterally created and sent to Bank of America regarding default and opportunity to cure c/o of SunTrust Mortgage, Inc. and CC-ed to Hunt Leibert on Aug. 26, 2009 in which she again requests that Bank of America provide proof of assignment of her loan.  *See* [Dkt. #174, Ex. K].  A reasonable jury could not conclude based on such evidence that Hunt Leibert was not a law firm representing Bank of America and that Hunt Leibert engaged in deceptive means to collect a debt.

Plaintiff also argues that on several occasions "a false representation or implication was made that Blake Driscolli is an attorney or that the communication from him was from an attorney."  [*Id.* at ¶¶16, 20, 21].  In support of this assertion, Plaintiff submits three letters that Blake Driscolli on behalf of Hunt Leibert sent to Plaintiff regarding the state foreclosure action.   *See* [Dkt. # 175, Exs. R,W,X].  Again, Plaintiff presents no evidence which demonstrates that Blake Driscolli is not an attorney beyond her own personal conjecture or surmise.  A reasonable jury could not conclude based on these letters that Blake Driscolli was not an attorney.  Even if Blake Driscolli was not an attorney but a non-attorney employee of Hunt Leibert, a reasonable jury would not conclude based on such a fact that Hunt Leibert engaged in deceptive means to collect a debt in violation of Section 1692e.

In sum, a reasonable jury would not find based on the record evidence that Hunt Leibert violated 1692e.  Plaintiff's theories that the Mortgage Deed and Note at issue are invalid and therefore Hunt Leibert was attempting to collect a "debt" that did not exist are based on erroneous and untenable conclusions of law and therefore fail as a matter of law.

Hunt Leibert has also moved for summary judgment on Plaintiff's FDCPA claims on several other grounds.  Hunt Leibert argues that the FDCPA suit was filed before any breach of statutory duty occurred and before any damages could have accrued since Plaintiff filed the lawsuit before the 5 day period to send the validation notice had expired under Section 1692g(a).  Hunt Leibert also argues that (i) Plaintiff has failed to plead any special loss and therefore may not recover actual damages under the FDCPA; (ii) that there is insufficient evidence to support an emotional distress claim under the FDCPA and (iii) that since it has filed an offer of judgment that mooted the statutory damage claim under the FDCPA.   However, since the Court has found there was no violation of Sections 1692g or Section 1692e, the Court need not address these arguments.

### iii.    Hunt Leibert did not violate CUPTA

Plaintiff's CUTPA is predicated on her assertion that by violating the FDCPA Hunt Leibert also violated CUTPA.  Since the Court has found that Hunt Leibert did not violate the FDCPA, Plaintiff's CUTPA likewise fails.  However, assuming arguendo that Hunt Leibert's conduct at issue did violate the FDCPA such a technical violation would not offend public policy or implicate the type of unfair practices that CUTPA was designed to address.

CUTPA provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b(a). As interpreted by the Connecticut Supreme Court, there are three criteria for determining whether an act or practice is "unfair" within the meaning of CUTPA:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise-in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors, or other businesspersons].... All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.

*Ventres v. Goodspeed Airport, LLC,* 275 Conn. 105, 154–55, 881 A.2d 937 (2006). "Any person *who suffers any ascertainable loss of money or property,* real or personal, as a result of the use or employment of a method, act or practice prohibited by [§ ] 42–110b, may bring an action ... to recover actual damages." *Id.* Conn. Gen.Stat. § 42–110g(a) (emphasis added).

Here, Hunt Leibert's purported failure to send a validation notice within 5 days, to the extent it can be said to constitute a violation of the FDCPA, is merely technical in nature and therefore simply does not rise to the egregious level of conduct which constitutes conduct which offends public policy or other established concept of unfairness as required under CUTPA.

Connecticut courts have repeatedly acknowledged that a technical violation of a statute does not necessarily offend public policy and thereby give rise to a CUTPA violation. *See e.g., Normand Joseph Enterprises v. Connecticut*

*Nat'l Bank*, 230 Conn. 486, 524-25 (1994) (holding that a "technical violation" of a midnight deadline which governs handling of customer bank accounts under Conn. Gen. Stat. § 52-367a was "no more than a technical violation" of the statute which "did not offend public policy, implicate the concept of unfairness or cause the type of substantial injury that CUTPA was designed to address."); *Jacobs v. Healey Ford-Subaru, Inc.*, 231 Conn. 707, 729 (1995) (holding violations of certain provisions of the Retail Installment Sales Financing Act and the Uniform Commercial Code did not violate CUTPA where trial referee concluded that the defendant's statutory noncompliance was not unfair, deceptive or oppressive); *Leaksealers, Inc. v. Connecticut Nat. Bank*, No.CV920517952, 1995 WL 384611, at *10 (Conn. Super. Ct. June 20, 1995) (noting that "a violation of a statute does not necessarily give rise to a violation of public policy and, in turn, a violation of CUTPA" and that "a "[v]iolation of an identifiable public policy alone may be insufficient under certain circumstances to support a CUTPA violation."). Connecticut courts have instructed that "where a party claims a CUTPA violation based on an alleged violation of a public policy statute, the court's focus should be on the circumstances surrounding the violation of the statute, rather than on a technical violation of the statute itself." *Leaksealers*, 1995 WL 384611 at *10.

Here, contrary to Plaintiff's strongly-held belief, a reasonable jury would not conclude that Hunt Leibert's conduct was unfair, deceptive or oppressive.  All of Plaintiff's FDCPA allegations arise from Hunt Leibert's conduct in initiating and prosecuting a foreclosure action in state court.   As discussed above, civil litigants in state court are afforded a broad array of procedural and substantive

protections against unscrupulous, unfair, and deceptive practices generally. Consequently, such a technical violation of the FDCPA in connection with a state foreclosure action does not implicate the public policy as established by the FDCPA or other established concepts of unfairness.  As discussed above, the FDCPA's purpose to protect unsophisticated consumers from unscrupulous debt collectors is not implicated where a mortgagee is already protected by the court system and its officers.  Accordingly the public policy embodied by the FDCPA was not implicated by Hunt Leibert's conduct in the instant action and therefore a reasonable jury would not conclude that Hunt Leibert's conduct in the instant matter rose to the level of a CUTPA violation.

Hunt Leibert also argues that it is protected by the doctrine of absolute immunity to the extent that Plaintiff's CUTPA claim is premised upon pleadings in the course of judicial proceedings.  "It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy ... The privilege applies also to statements made in pleadings or other documents prepared in connection with a court proceeding." *Alexandru v. Strong,* 81 Conn.App. 68, 83 (2004) (internal quotation marks and citations omitted). However, since Plaintiff's CUTPA claim is predicated on her assertion that a violation of the FDCPA is also a violation of CUTPA her claim is not premised on any statements Hunt Leibert made in the foreclosure action and instead predicated on its failure to comply with the technical requirements of the FDCPA.

Lastly Hunt Leibert argues that Plaintiff's CUTPA claim fails because there is no evidence of ascertainable loss.  Since the Court has held that Hunt Leibert's conduct did not offend public policy, it need not address Hunt Leibert's arguments as to ascertainable loss.

### iv.    Miscellaneous Issues

The Court notes that Plaintiff has moved to strike all of the documents used by the Defendant from the "Referral Package" on its motion for summary judgment.  *See* [Dkt. #199].  On July 22, 2011, the Court ordered Hunt Leibert to file in camera for the Court's review all documents withheld on the basis of attorney client privilege which included the "Referral Package" which is a group of documents and correspondence exchanged between Hunt Leibert and its client regarding the initiation of the state foreclosure action.  See [Dkt. #158].  On September 26, 2011, the Plaintiff moved to compel Hunt Leibert to produce the Referral Package.  *See* [Dkt. #164].  On November 14, 2011, the Court granted Plaintiff's motion to compel the production of the referral package finding that the contents of the package were not protected by attorney client privilege.  *See* [Dkt. #186].  Although the Court granted the motion to compel after Plaintiff had filed her motion for summary judgment, Plaintiff has not sought to amend her summary judgment based upon any newly discovered information from the Referral Package.  In fact, the Referral Package contains either documents which Plaintiff had in her possession or other material which is entirely irrelevant to Plaintiff's allegations.

The Referral Package contains the following material: (i) a title search request form from client SunTrust Mortgage regarding Plaintiff's property; (ii) a letter from SunTrust Mortgage dated June 10, 2009 to Hunt Leibert indicating that Plaintiff's account is in default and referring the matter for foreclosure to Hunt Leibert; (iii) a copy of the Note dated July 24, 2009; (iv) an engagement letter from Hunt Leibert to SunTrust Mortgage indicating that SunTrust Mortgage has retained Hunt Leibert to provide legal services in connection with the foreclosure; (iv) SunTrust Mortgage's in house attorney directory and profile; (v) a release dated September 20, 2002 from the U.S. Department of Housing and Urban Development regarding the clarification regarding title approval issues, property condition at conveyance, administrative offset and a new process for lender appeal of conveyance issues.

The Court notes that under Rule 26(b) the scope of discovery is limited to "nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26 (b).  Here the documents included in the Referral Package except for the Note are simply irrelevant to Plaintiff's claim that Hunt Leibert violated Sections 1692g and 1692e.  The Court ordered Hunt Leibert to produce the Referral Package, notwithstanding its redundancy and irrelevancy, in placation in light of the Plaintiff's *pro se* status and vociferous suspicion.  Consequently, Plaintiff suffered no prejudice or hardship by filing her cross motion summary judgment and opposing Hunt Leibert's motion for summary judgment before receiving the Referral Package.  The Court also notes that Hunt Leibert did not rely on any of the documents included in the referral package in its motion for

summary judgment with the exception of the Note.  However, the Note was already in the possession of the Plaintiff before the lawsuit began as she was a party to the Note and therefore Plaintiff was not prejudiced in any manner whatsoever by Hunt's reliance on the Note in its motion for summary judgment.

Lastly, since the Court has granted summary judgment in favor of Hunt Leibert, the Court need not address Plaintiff's argument regarding the allegedly missing page from her complaint seeking monetary relief.

<u>Conclusion</u>

Based upon the above reasoning, the Defendant's [Dkt. #170] motion for summary judgment is GRANTED and Plaintiff's [Dkt. #174] cross-motion for summary judgment is DENIED.  The Clerk is directed to enter judgment in favor of Defendant and close the case.


IT IS SO ORDERED.


_____/s/_____

Hon. Vanessa L. Bryant

United States District Judge


Dated at Hartford, Connecticut: July 23, 2012